**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PAUL MEDEIROS, *Personal Representative of the Estate of Lori Ann Medeiros*,<br><br>Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS; TOWNS OF LAKEVILLE AND MIDDLEBOROUGH, MASSACHUSETTS; STEPHEN ROBBINS; MATTHEW PERKINS; MICHAEL REYNOLDS; WILLIAM MCSWEENEY; JASON TROUT; RYAN CRAMER; SHAUN BELLAO; and JOHN MICCICHE,<br><br>Defendants. | No. 1:25-cv-13257-JEK |

**MEMORANDUM AND ORDER ON DEFENDANT RYAN CRAMER'S MOTION FOR JOINDER AND THE OTHER DEFENDANTS' MOTIONS TO DISMISS**

**KOBICK, J.**

In November 2022, a fleeing suspect crashed his car into Lori Ann Medeiros following a high-speed police chase in Middleborough and Lakeville, Massachusetts, resulting in her tragic death. Her husband, plaintiff Paul Medeiros, brings this action as the personal representative of her estate. He asserts claims of wrongful death and negligence, as well as constitutional claims under 42 U.S.C. § 1983, against those involved in the chase: the Commonwealth, its State Police Sergeant William McSweeney, and its Troopers Michael Reynolds, Jason Trout, Shaun Bellao, and John Micciche; the Town of Lakeville and its Chief of Police Matthew Perkins; the Town of Middleborough and its Officer Stephen Robbins; and Detective Sergeant Ryan Cramer of the East Bridgewater Police Department. Pending before the Court are motions to dismiss filed by the

Commonwealth; Lakeville and Chief Perkins; Middleborough and Officer Robbins; Trooper Trout; and Sergeant McSweeney and Troopers Reynolds, Bellao, and Micciche. Also pending is a motion by Detective Sergeant Cramer to join the latter two motions to dismiss.

The Commonwealth's motion will be granted because the Massachusetts State Police is entitled to Eleventh Amendment immunity on the wrongful death and negligence claims and, as Mr. Medeiros concedes, is not liable under Section 1983. The motions to dismiss filed by Trooper Trout as well as by Sergeant McSweeney and Troopers Reynolds, Bellao, and Micciche will also be granted because the wrongful death claim against them is precluded by the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 *et seq.*, and they are shielded by qualified immunity from the Section 1983 claim. The partial motions to dismiss filed by Lakeville and Chief Perkins, as well as by Middleborough and Officer Robbins, will be granted with respect to the individual defendants but denied as to the Towns. Chief Perkins and Officer Robbins are entitled to qualified immunity on the Section 1983 claims, and the MTCA bars the wrongful death and negligence claims against them. Against Lakeville and Middleborough, however, Mr. Medeiros states plausible claims for negligent failure to train and supervise under Section 1983. Those claims, as well as Mr. Medeiros' negligence and wrongful death claims, will go forward as against the Towns. Finally, Detective Sergeant Cramer's motion for joinder will be denied as procedurally improper.

## BACKGROUND

### I. <u>Factual Background.</u>

The following facts, drawn from the amended complaint, are accepted as true for purposes of the motions to dismiss.

In the afternoon on November 7, 2022, Mrs. Medeiros was stopped at the intersection of Kingman and Seekell Streets in Taunton, Massachusetts when Hector Bannister lost control of his

speeding vehicle, crossed into the opposing lane, collided with her car, and killed her. ECF 50, ¶¶ 32-38. Bannister was actively fleeing law enforcement in a high-speed chase that began in Middleborough. *Id.* ¶ 27. At the time of the police pursuit, he was a suspect in an ongoing drug investigation. *Id.* ¶ 21. The Commonwealth Interstate Narcotics Reduction Enforcement Team ("CINRET") unit of the Massachusetts State Police had been physically and electronically surveilling Bannister, with the assistance of a GPS device affixed to his car, for approximately three months. *Id.* ¶¶ 21-22.

Earlier that afternoon, Troopers Reynolds, Bellao, Trout, and Micciche and Detective Sergeant Cramer from the CINRET unit followed Bannister from his girlfriend's house in Norton to a residence in Middleborough, where they attempted, but failed, to apprehend him. *Id.* ¶¶ 21, 23. One of the troopers drew his firearm and yelled "police," causing Bannister to flee and drive toward Route 44. *Id.* ¶ 24. In their respective vehicles, Trooper Reynolds, then Trooper Trout and Detective Sergeant Cramer, followed by Troopers Bellao and Micciche, immediately began pursuing Bannister, whose GPS location was being broadcast through dispatch to Middleborough police officers and state law enforcement. *Id.* ¶¶ 27-28.

Travelling west on Route 44, Bannister drove erratically at high speeds as law enforcement pursued him in marked and unmarked cars with lights and sirens activated. *Id.* ¶ 28. Those officers in the CINRET unit continued to chase Bannister through a six-way intersection on Everett Street to Route 28, where Officer Robbins activated his lights and sirens and joined the pursuit. *Id.* ¶ 30. Officer Robbins followed Bannister, who was driving in every lane of traffic, onto Wood Street, where the road became increasingly busy as Middleborough High School had just let out for the day. *Id.* Sergeant McSweeney maintained pursuit as Bannister turned onto Route 79, and Officer Robbins relayed Bannister's location to dispatch to inform the Lakeville Police that Bannister was

driving in its direction. *Id.* ¶ 31. After receiving the alert from dispatch, Chief Perkins drove east on Route 79 with his lights and sirens activated, searching for Bannister. *Id.* ¶ 32. Chief Perkins joined the pursuit when Bannister sped by him at excessive speeds going west on Route 79 and onto Kingman Street. *Id.* State and Lakeville Police continued to follow Bannister with the aid of the GPS until they located him at the crash site. *Id.* ¶ 33. Throughout the chase, Bannister drove erratically, in all lanes of traffic, on roads densely populated with residences, businesses, and other vehicles, at speeds as high as 101 miles per hour. *Id.* ¶¶ 35-36. He was travelling at 84.3 miles per hour when he hit Mrs. Medeiros. *Id.* ¶ 35.

Mr. Medieros alleges that the defendants should not have initiated the chase because they could have located Bannister's car later through GPS monitoring. *Id.* ¶ 41. The pursuit also allegedly violated the policies of the State, Middleborough, and Lakeville Police. *Id.* ¶ 42. The State Police has a policy that "high speed pursuits should be limited to situations involving dangerous felony offenses" and officers "should prioritize public safety over immediate apprehension." *Id.* ¶ 43. The Middleborough Police Department's policy similarly "emphasizes public safety over the apprehension of a suspect." *Id.* ¶ 44. The Lakeville Police Department permits a high-speed pursuit only if officers "believe the risk to public safety or the need for immediate apprehension outweighs the risks of the pursuit itself." *Id.* ¶ 45.

## II. <u>Procedural History.</u>

Mr. Medeiros initiated this action in November 2025 as the personal representative of his late wife's estate. ECF 1, ¶ 1. The amended complaint, filed in March 2026, asserts nine claims against the various defendants. ECF 50. Mr. Medeiros brings common law wrongful death claims under the MTCA, M.G.L. c. 258, § 2, against Middleborough and Officer Robbins (Count I), Lakeville and Chief Perkins (Count II), and the Massachusetts State Police (Count III). *Id.* ¶¶ 51-

62. Counts IV through VI, respectively, assert negligence claims against those same defendants. *Id.* ¶¶ 63-80. Against all individual defendants, Mr. Medeiros advances a substantive due process claim under 42 U.S.C. § 1983 (Count VII) and a wrongful death claim under M.G.L. c. 229, § 2 (Count VIII). *Id.* ¶¶ 81-93. Count IX asserts a claim of negligent training and supervision under Section 1983 against the Commonwealth, Middleborough, and Lakeville. *Id.* ¶¶ 94-102. As relief, the amended complaint seeks compensatory and punitive damages. *Id.* at 19.

In March 2026, the Commonwealth moved to dismiss the wrongful death and negligence claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and the Section 1983 claim for failure to state a claim pursuant to Rule 12(b)(6). ECF 56. Lakeville and Chief Perkins filed a partial Rule 12(b)(6) motion to dismiss seeking dismissal of all the claims against Chief Perkins and the Section 1983 claim against Lakeville. ECF 52. Middleborough and Officer Robbins filed another partial Rule 12(b)(6) motion to dismiss similarly seeking dismissal of all the claims against Officer Robbins and the Section 1983 and negligence claims against Middleborough. ECF 58. Trooper Trout as well as Sergeant McSweeney and Troopers Reynolds, Bellao, and Micciche filed separate Rule 12(b)(6) motions to dismiss. ECF 54; ECF 60. In May 2026, Detective Sergeant Cramer filed an answer. ECF 82. He then moved in June 2026 to join in the latter two motions to dismiss. Following briefing on these six motions, the Court held a hearing and took the motions under advisement in July 2026. ECF 71-74, 79-80, 85, 88.

**STANDARDS OF REVIEW**

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation marks omitted). When ruling on such a motion, the Court must credit the "plaintiff's

well-pled factual allegations and dra[w] all reasonable inferences in the plaintiff's favor." *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 13 (1st Cir. 2023) (quotation marks omitted).

In assessing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

The Court begins with Detective Sergeant Cramer's motion for joinder before turning to the other defendants' motions to dismiss. Detective Sergeant Cramer moves to join the motions to dismiss filed by Trooper Trout and by Sergeant McSweeney and Troopers Reynolds, Bellao, and Micciche because, in his view, he "is similarly situated to these other law enforcement defendants, and the facts of this case and the law justify dismissal of all of the plaintiff's claims against" him. ECF 84, at 1; *see* ECF 54, at 60. As procedural matter, however, Detective Sergeant Cramer cannot join those motions to dismiss because he has already filed an answer. *See* ECF 82; Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). His motion must therefore be denied as procedurally improper. *See* 5C Wright & Miller's Federal Practice & Procedure § 1361 (3d ed. 2025) ("A strict interpretation of the timing provision's language leads to the conclusion that the district judge must deny any Rule

12(b) motion made after a responsive pleading is interposed as being too late."). Detective Sergeant Cramer's motion will also be denied because he failed to comply with Local Rule 7.1(a)(2)'s requirement that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." The motion does not include a good faith conferral statement and, as Mr. Medeiros represents, Detective Sergeant Cramer did not so confer. *See* ECF 84; ECF 85, at 3.

## I. <u>State Law Claims.</u>

The Court addresses Mr. Medeiros' common law wrongful death and negligence claims against the Massachusetts State Police, Lakeville and its Chief Perkins, and Middleborough and its Officer Robbins (Counts I-VI) before turning to his statutory wrongful death claim under M.G.L. c. 229 § 2 against all of the individual defendants (Count VIII).

### A. <u>Common Law Wrongful Death Claims.</u>

Mr. Mederios asserts common law wrongful death claims pursuant to the MTCA, M.G.L. c. 258, § 2, against the Massachusetts State Police, Lakeville and its Chief Perkins, and Middleborough and its Officer Robbins.

#### *1. Massachusetts State Police.*

The Commonwealth seeks to dismiss the wrongful death claim against the State Police as barred by the Eleventh Amendment to the United States Constitution. That Amendment provides States with immunity from suit in federal court unless the State has waived its immunity by consenting to be sued or Congress has expressly abrogated that immunity. *See Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48-49 (1st Cir. 2003). Such immunity extends to "state agencies and departments," including the Department of State Police. *Cotto v. Campbell*, 126 F.4th 761, 767 (1st Cir. 2025); *see* ECF 50, ¶¶ 4-5 (identifying the State Police as an agency of Massachusetts).

Mr. Medeiros does not argue that Congress has abrogated States' Eleventh Amendment immunity from wrongful death claims. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). Nor does he argue that Massachusetts has waived its immunity by "making a 'clear declaration'" of intent in a state statute to submit to this Court's jurisdiction. *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 24 (1st Cir. 2001) (quoting *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)). As the First Circuit has observed, the Commonwealth did "not waiv[e] its Eleventh Amendment immunity to suit in federal court" by passing the MTCA. *Caisse v. Dubois*, 346 F.3d. 213, 218 (1st Cir. 2003); *see* M.G.L. c. 258, § 3 (permitting wrongful death suits in state court).

Mr. Medeiros instead contends that the Commonwealth may have "constructively or impliedly consented" to this lawsuit because the Massachusetts Attorney General "failed, refused or neglected to respond" to his presentment letter as required by M.G.L. c. 258, § 4. ECF 72, at 6. But "a State's waiver of its Eleventh Amendment immunity through conduct in litigation must be unambiguous and evince a clear choice to submit its rights to adjudication by the federal courts." *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano*, 695 F.3d 83, 103 (1st Cir. 2012) (citation modified). Such "unequivocal" conduct has been found where a State removes an action to federal court or files a proof of claim in a bankruptcy proceeding. *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 51-52 (1st Cir. 2003). The Commonwealth's failure to respond to Mr. Medeiros' letter does not rise to that level and establish that it voluntarily invoked this Court's jurisdiction. The Commonwealth's motion also demonstrates its intent *not* to waive its Eleventh Amendment immunity. *See Ramos-Piñero v. Puerto Rico*, 453 F.3d 48, 52 (1st Cir. 2006) (no waiver of Eleventh Amendment immunity "by filing a motion to dismiss" raising such immunity). Count III against the State Police must, accordingly, be dismissed without prejudice.

*2. Chief Perkins and Officer Robbins.*

Chief Perkins and Officer Robbins argue that the wrongful death claims against them are barred by the MTCA, which "extends immunity from personal liability to public employees who are acting within the scope of their duties." *McNamara v. Honeyman*, 406 Mass. 43, 46 (1989). Under the MTCA, no "public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." M.G.L. c. 258, § 2. Such immunity "encompasses claims for negligence, gross negligence, and reckless conduct," regardless of whether the public employee is sued in his individual or official capacity. *Doyle v. City of Quincy*, 104 Mass. App. Ct. 761, 764 & n.7 (2024) (citing *McNamara*, 406 Mass. at 46); *accord Grafton & Upton R.R. Co. v. Burt*, 106 Mass. App. Ct. 503, 511 (2026). The amended complaint alleges that Chief Perkins and Officer Robbins were "acting within the scope of [their] employment" at Lakeville and Middleborough, respectively, at "all relevant times"; are being sued "in [their] individual capacit[ies]"; and "acted negligently and/or recklessly." ECF 50, ¶¶ 8-9, 52, 56. The MTCA thus affords Chief Perkins and Officer Robbins immunity from personal liability on Mr. Medeiros' wrongful death claims.

Mr. Medeiros attempts to resist this conclusion by pointing to section 10 of the MTCA, which "creates several exceptions to the general waiver of sovereign immunity" for public employers. *Doe v. Massachusetts Trial Ct.*, 494 Mass. 408, 412 (2024) (citing M.G. L. c. 258, § 10 (a)-(j)). In particular, Mr. Medeiros relies on section 10(b) and 10(j) of the MTCA. *See* ECF 71, at 7-8; ECF 73, at 13-14. But neither exception applies to a public employee like Chief Perkins or Officer Robbins. Those exceptions shield public *employers* from liability; they do not open individual public *employees* up to liability. *See Doe*, 494 Mass. at 412 (citing M.G.L. c. 258, § 10(b)); *Theisz v. Massachusetts Bay Transp. Auth.*, 495 Mass. 507, 513-14 (2025) (citing M.G.L.

c. 258, § 10(j)). Accordingly, the wrongful death claims asserted against Officer Robbins and Chief Perkins in Counts I and II are barred by the MTCA and must be dismissed. As neither Middleborough nor Lakeville has moved to dismiss the wrongful death claims asserted against them in Counts I and II, those claims will proceed to discovery only against the Towns. *See* M.G.L. c. 258, § 1 (defining public employers to include "the commonwealth and any . . . town" and "any department [or] office . . . thereof").

B. Negligence Claims.

Mr. Mederios also asserts negligence claims against the Massachusetts State Police, Lakeville and its Chief Perkins, and Middleborough and its Officer Robbins. The Commonwealth contends that the negligence claim against the State Police is, like the wrongful death claim, barred by the Eleventh Amendment. Chief Perkins and Officer Robbins similarly argue that they are immune from liability for this claim under the MTCA. For the same reasons the wrongful death claims against the State Police, Chief Perkins, and Officer Robbins are subject to dismissal, the negligence claims against them must be dismissed as well.

Middleborough contends that the negligence claim against it is derivative of Mr. Mederios' claim under the wrongful death statute, which, in its view, provides "the exclusive remedy for claims of negligence . . . brought by the estate of a decedent." ECF 59, at 11. But Middleborough cites no case law to support the proposition that a negligence claim and a claim under the wrongful death statute cannot proceed concurrently at the pleading stage. Under Federal Rule of Civil Procedure 8(d), Mr. Medeiros may "plead alternative theories of liability." *Limone v. United States*, 579 F.3d 79, 93 (1st Cir. 2009). Indeed, the Supreme Judicial Court has described, without objection, a case in which the plaintiff brought both a negligence claim and a claim under M.G.L.

c. 229, § 2. *See GGNSC Admin. Servs., LLC v. Schrader*, 484 Mass. 181, 183 n.8 (2020). Count IV against Middleborough will not, accordingly, be dismissed at this stage.

C. Claims Under M.G.L. c. 229, § 2.

Count VIII asserts a statutory wrongful death claim under M.G.L. c. 229, § 2 against all of the individual defendants. The statute provides, in pertinent part, that a "person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages." M.G.L. c. 229, § 2.

Chief Perkins and Officer Robbins contend that they are immune from liability on this claim as well under the MTCA. As the Supreme Judicial Court has observed, "direct recovery against the police officers under G.L. c. 229, § 2, is barred by the" MTCA and "the plaintiff's action for wrongful death lies only against the city." *Miga v. City of Holyoke*, 398 Mass. 343, 352 n.10 (1986). So too here, and Count VIII must therefore be dismissed as to Chief Perkins and Officer Robbins.

Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche of the State Police similarly argue that the MTCA affords them immunity. Under the MTCA, as explained, "public employees who commit negligent or wrongful acts or omissions while acting within the scope of their office or employment are immune from liability, regardless of the capacity in which they are sued." *Grafton & Upton R.R.*, 106 Mass. App. Ct. at 511 (citation modified). The amended complaint alleges that these defendants were "acting within the scope of [their] employment" at "all relevant times"; are being sued "in [their] individual capacit[ies]"; and "acted willfully, wantonly and/or recklessly." ECF 50, ¶¶ 10-12, 14-15, 91. Because "they were acting within the scope of their . . . employment," these "individual defendants cannot be held liable" under the

MTCA for Mr. Medeiros' "wrongful death claim pursuant to G.L. c. 229, § 2." *Brum v. Town of Dartmouth*, 44 Mass. App. Ct. 318, 321 n.2 (1998), *rev'd in part*, 428 Mass. 684 (1999). Count VIII must therefore be dismissed as to Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche.

To the extent the amended complaint could be read to suggest that Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche were acting outside the scope of their employment, these defendants contend, and the Court agrees, that they are shielded by common law immunity. Under Massachusetts common law, "a public official exercising judgment and discretion is not liable for negligence or other errors during official decision-making, provided the official acted in good faith, without malice, and free of corruption." *Bresler v. Muster*, 496 Mass. 111, 122 (2025). Common law immunity "presum[es] that public officials act honestly and in the public interest," and to defeat such a presumption, Mr. Medeiros must allege that the defendants "acted in bad faith or with malice." *Id*. While "malice" signifies "'a wrongful act, done intentionally, without just cause or excuse,'" "bad faith" indicates "'a dishonest purpose or some moral obliquity, a conscious doing of wrong, or a breach of a known duty through some motive of interest or ill will.'" *Id*. (citations omitted). The amended complaint contains no allegations to support an inference that Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche acted in bad faith or with malice. Merely alleging that those defendants "willfully, wantonly and/or recklessly" engaged in a pursuit and failed to disengage when they had the opportunity to do so is insufficient. ECF 50, ¶ 91. These defendants are therefore protected by common law immunity, and Count VIII must be dismissed for this reason as well.

## II. <u>Section 1983 Claims.</u>

Pursuant to 42 U.S.C. § 1983, Mr. Medeiros asserts substantive due process claims against the individual defendants (Count VII), and claims that the Commonwealth, Middleborough, and Lakeville are liable for their failure to train and supervise the officers who violated Mrs. Medeiros' substantive due process rights (Count IX). The Court addresses those claims in turn.

### A. <u>Individual Defendants.</u>

Count VII asserts that the individual defendants deprived Mrs. Medeiros of her substantive due process rights guaranteed under the Fourteenth Amendment. Because Mrs. Medeiros was allegedly killed "as a result of police misconduct" in a high-speed chase, Mr. Medeiros "may prosecute a substantive due process claim under section 1983" on her behalf. *Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir. 1996). To sustain such a claim, Mr. Medeiros must allege that each officers' conduct "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *see Welch v. City of Biddeford Police Dep't*, 12 F.4th 70, 76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of other officers."). Whether conduct qualifies "as a due process violation will depend upon the context in which it occurs." *Cummings v. McIntire*, 271 F.3d 341, 344 (1st Cir. 2001). "Deliberate indifference that shocks in one environment may not be so patently egregious in another." *Lewis*, 523 U.S. at 850. In "a high-speed automobile chase aimed at apprehending a suspected offender," when "unforeseen circumstances demand an officer's instant judgment," "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836, 853. But in a non-emergency context, when an officer has "an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to shock the conscience." *Maldonado-González v. Puerto Rico Aqueduct & Sewer Auth.*, 158 F.4th

27, 36 (1st Cir. 2025) (quotation marks omitted). To plausibly allege deliberate indifference, Mr. Medeiros must plead facts demonstrating that, "at a bare minimum," the officers "actually knew of a substantial risk of serious harm to [Mrs. Medeiros] and disregarded that risk." *Coyne v. Cronin*, 386 F.3d 280, 288 (1st Cir. 2004).

Mr. Medeiros plausibly alleges a substantive due process claim against Chief Perkins, Officer Robbins, Sergeant McSweeney, and Troopers Reynolds, Trout, Bellao, and Micciche.[1] According to the amended complaint, "the pursuing officers did not face an ongoing emergency because they could have located Bannister later with the aid of the GPS device attached to his vehicle" and thus "had time to contemplate their course of action and refrain from chasing and/or abandon their pursuit." ECF 50, ¶ 84. In particular, Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche were all part of the CINRET unit that was "both physically, and electronically, surveilling Bannister" in connection with a three-month-long drug investigation. *Id.* ¶¶ 10-15, 21-23. When Bannister started fleeing, those officers "had the time and opportunity to evaluate their options to apprehend Bannister later that day, or even another day, and not initiate a chase" because "they had the GPS device attached to his vehicle." *Id.* ¶ 25. Rather than deescalate the situation, they decided to commence a high-speed chase through populated neighborhoods. *Id.* ¶¶ 26-27. Middleborough Detective Lieutenant "Kris Dees was using the GPS unit to broadcast Bannister's locations to assist Middleborough police" officers like Officer Robbins, who later joined that pursuit. *Id.* ¶¶ 28, 30-31. And Chief Perkins then joined the chase after "Officer Robbins called out Bannister's locations to dispatch." *Id.* ¶¶ 31-32.

[1] Having denied Detective Sergeant Cramer's motion for joinder, the Court excludes him from this analysis.

Given these allegations of a non-emergency pursuit, which are accepted as true, Mr. Medeiros need only allege that these officers acted with deliberate indifference, not with intent to cause harm, to satisfy the shocks-the-conscience standard. *Maldonado-González*, 158 F.4th at 36. The amended complaint does so by alleging that they engaged in "reckless and callous conduct" with "conscious disregard for the serious risk of great bodily harm." ECF 50, ¶¶ 85-87. Specifically, Sergeant McSweeney and Troopers Reynolds, Trout, Bellao, and Micciche allegedly "acted with deliberate indifference to public safety" by initiating a high-speed chase that they "knew or should have known" would cause Bannister to "drive erratically and dangerously." *Id.* ¶¶ 25-26. Those officers, along with Chief Perkins and Officer Robbins, also allegedly "knew or should have known that pursuing Bannister during the middle of the day on public roadways lined with businesses and residences and a high school in session would endanger the lives of innocent civilians." *Id.* ¶ 41. Mr. Medeiros has therefore adequately alleged that these individual defendants violated Mrs. Medeiros' substantive due process rights. *See Maldonado-González*, 158 F.4th at 37 (vacating dismissal of substantive due process claim where "the plaintiffs' allegations support[ed] a reasonable inference that the defendants were deliberately indifferent to the risks to the plaintiffs' lives and health"); *Marrero v. City of Brockton*, 710 F. Supp. 3d 83, 89 (D. Mass. 2024) (denying motion to dismiss such a claim as premature where plaintiffs "alleged that the high-speed chase was unnecessary," violated "specific directives," and did not occur in an "emergency situation").

As an affirmative defense, these defendants all argue that they are nevertheless entitled to qualified immunity on the substantive due process claim. Qualified immunity protects public officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). "The qualified immunity inquiry proceeds with a now-familiar two-part test: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019) (quotation marks omitted); *see Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022) ("The prongs need not be addressed in order, and an officer may be entitled to immunity based on either prong.").

With respect to the first prong, Mr. Medeiros has, as explained, plausibly alleged a constitutional violation by the individual defendants. Next, the "clearly established" prong involves two sub-inquiries. The first "'focuses on the clarity of the law at the time of the violation.'" *Penate*, 944 F.3d at 366 (quoting *Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013)). The second "'focuses more concretely on the facts of the particular case and whether a reasonable defendant would have known that his conduct violated the plaintiff's constitutional rights.'" *Id.* (quoting *Drumgold*, 707 F.3d at 42). "The salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).

Mr. Medeiros argues, as a threshold matter, that it is premature to assess whether the second prong has been met. True, "courts often evaluate qualified immunity defenses at the summary judgment stage" because it "is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity." *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). But since "qualified immunity is an immunity from suit, an officer's claim of qualified immunity ought to be resolved as soon as possible in the litigation." *Brown v. Dickey*, 117 F.4th 1, 6 (1st Cir. 2024) (citation modified). And determining qualified immunity at the pleading stage is appropriate "'when the complaint provides all of the facts needed to assess the

plaintiff's claim.'" *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 46 n.46 (1st Cir. 2026) (quoting *Giragosian*, 614 F.3d at 29). Mr. Medeiros' amended complaint does just that.

Mr. Medeiros contends that "in a high-speed chase with a GPS tracker," the individual defendants' "conduct was so clearly dangerous and unnecessary that it was known to be improper" because "Bannister could have been safely apprehended later." ECF 73, at 12. But he identifies neither a controlling Supreme Court or First Circuit case nor a sufficient consensus of persuasive authority clearly establishing in November 2022 that one had a right not to be injured or killed as a result of a police officer's allegedly reckless pursuit of a fleeing individual when there was no pending emergency, because that officer was tracking the individual's car through GPS monitoring. *See Cintron v. Bibeault*, 148 F.4th 37, 51-52 (1st Cir. 2025) (clearly established inquiry "look[s] mainly to Supreme Court and First Circuit precedent" but also "consider[s] cases from other courts"). The First Circuit has repeatedly concluded, to the contrary, that there is "no substantive due process liability in situations in which law enforcement officers . . . participat[ed] in reckless high-speed car chases resulting in fatalities." *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) (citing *Boveri v. Town of Saugus*, 113 F.3d 4, 7 (1st Cir. 1997), and *Evans*, 100 F.3d at 1038).

Mr. Medeiros' reliance on decisions by the Third Circuit, Fourth Circuit, and this Court does not change the established law of the First Circuit. In *Marrero*, while citing "cases finding liability in connection with high-speed chases," this Court declined "to determine whether the right was 'clearly established' at the time of the defendant's alleged violation" in April 2020. 710 F. Supp. 3d at 90. That decision, issued in January 2024, also postdated the November 2022 conduct at issue here. *See Segrain v. Duffy*, 118 F.4th 45, 58 n.1 (1st Cir. 2024) (discounting district court decision as being "published too late" to clearly establish a constitutional violation). In *Dean*

*ex rel. Harkness v. McKinney*, the Fourth Circuit held that a reasonable officer would have known in October 2016 that he "may be subject to a claim under the Fourteenth Amendment under a deliberate indifference standard for unintentional injuries caused when *not* responding to an emergency or chasing a suspect." 976 F.3d 407, 419 (4th Cir. 2020) (emphasis added). But here, as pled, the police officers were pursuing a fleeing suspect. And finally, in *Sauers v. Borough of Nesquehoning*, the Third Circuit held in October 2018 that "police officers engaged in a police pursuit [can] be subject to constitutional liability for a level of culpability less than an intent to harm" when they "engage in a high-speed pursuit" and have "time to consider whether to engage in such inherently risky behavior." 905 F.3d 711, 723 (3d Cir. 2018). But the right at issue in *Sauers* was the right "not to be injured or killed as a result of a police officer's reckless pursuit of an individual suspected of a summary traffic offense when there is no pending emergency and when the suspect is not actively fleeing the police." *Id.* at 717. Thus, even though *Sauers*, like this case, involved a deliberate indifference rather than an intent-to-harm standard, this case is meaningfully different because Bannister *was* actively fleeing the police. While Mr. Medeiros alleges that the officers here had time to decide whether to chase Bannister due to GPS tracking, Bannister was still a fleeing suspect whom they pursued. In any event, one Court of Appeals decision does not amount to "a consensus of cases of persuasive authority" sufficient to demonstrate "that a reasonable officer could not have believed that his actions were lawful," especially in light of binding First Circuit precedent to the contrary. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Accordingly, Mr. Medeiros plausibly alleges a substantive due process claim against Chief Perkins, Officer Robbins, Sergeant McSweeney, and Troopers Reynolds, Trout, Bellao, and Micciche, but those defendants are entitled to qualified immunity on that claim.

B. State and Municipal Defendants.

Count IX asserts a negligent training and supervision claim under Section 1983 against the Commonwealth, Lakeville, and Middleborough. Mr. Medeiros alleges that those defendants' "policies or custom of inadequate training and supervision of [their] troopers and police officers," "their failure to provide adequate policies and procedures," and "their failure to ensure compliance with their existing policies and procedures" caused his late wife's death. ECF 50, ¶ 99. Mr. Medeiros now concedes, however, that this claim against the Commonwealth is subject to dismissal because the Department of State Police is not a "person" subject to suit under 42 U.S.C. § 1983. ECF 72, at 6; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Segrain v. Duffy*, 118 F.4th 45, 72 n.16 (1st Cir. 2024); *Tyler v. Massachusetts*, 981 F. Supp. 2d 92, 95 (D. Mass. 2013). Count IX against the Commonwealth is therefore dismissed.

Turning to Lakeville and Middleborough, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" because "*[r]espondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). A plaintiff must allege that the municipality, "through its deliberate conduct, . . . was the 'moving force' behind the injury alleged," *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997), and that the illegal action was taken "pursuant to official municipal policy" or custom "of some nature," *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S.

51, 61 (2011).[2] A policy or custom may also encompass a municipality's failure to train its employees, if the plaintiff can demonstrate that "municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effect of those inadequacies." *Wadsworth v. Nguyen*, 129 F.4th 38, 68 (1st Cir. 2025) (quotation marks omitted). "Deliberate indifference requires a showing that [the municipality] disregarded a known or obvious risk of serious harm following from its failure to develop an adequate training program." *Id.*

Lakeville argues only that it cannot be held liable, and thus this claim is subject to dismissal, "absent a constitutional violation by its officers." *Evans*, 100 F.3d at 1040; *see Doe v. City of Boston*, 145 F.4th 142, 156 (1st Cir. 2025) ("an underlying constitutional violation" is required to find *Monell* liability). Having concluded that Mr. Medeiros plausibly alleges a substantive due process claim against Chief Perkins, the Court must reject this argument and deny Lakeville's motion to dismiss Count IX against it.

Middleborough contends that this claim fails solely because Mr. Medeiros does not identify a relevant policy or custom that caused the alleged constitutional violation against his late wife. In support, Middleborough points to a single sentence of the amended complaint where Mr. Medeiros alleges that "[i]f [proper pursuit] protocols existed, then the Middleborough police officers failed and/or neglected to adhere to them." ECF 50, ¶ 67. But this argument ignores other allegations, including the prior sentence alleging that Middleborough "failed to adequately train and supervise

---

[2] Whereas a policy "comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up." *Baron v. Suffolk Cnty. Sheriff's Dep't*, 402 F.3d 225, 236 (1st Cir. 2005), *abrogated on other grounds by Jennings v. Jones*, 587 F.3d 430, 438 n.10 (1st Cir. 2009). A custom may similarly be attributable to the municipality when it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Id.* at 236-37.

its law enforcement personnel regarding proper pursuit protocols." *Id.* The amended complaint also alleges that "the Middleborough Police Department has a restrictive policy regarding high-speed vehicle pursuits which emphasizes public safety over the apprehension of a suspect"; Middleborough "failed to provide adequate training to its troopers and officers regarding procedures and methods to avoid endangering the lives of innocent civilians"; and such "training, including situational awareness to determine whether to even begin a chase, would have prevented Mrs. Medeiros' death." *Id.* ¶¶ 44, 97-98. These allegations support the plausible inference that Middleborough has a "polic[y] or custom of inadequate training and supervision of its . . . police officers" with respect to high-speed vehicle pursuits chasing a fleeing suspect. *Id.* ¶ 99. Accordingly, Count IX will not be dismissed against Middleborough.[3]

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, the motions to dismiss filed by Sergeant McSweeney and Troopers Reynolds, Bellao, and Micciche, ECF 54, the Commonwealth, ECF 56, and Trooper Trout, ECF 60, are GRANTED. The partial motions to dismiss filed by Lakeville and Chief Perkins, ECF 52, and Middleborough and Officer Robbins, ECF 58, are GRANTED in part and

[3] Middleborough makes no further argument challenging the sufficiency of this claim. For the sake of completeness, however, Mr. Medeiros plausibly alleges that Middleborough's inadequate training on proper police pursuit protocols is "closely related to the ultimate [constitutional] injury" that he asserts. *Canton*, 489 U.S. at 391. And while Mr. Medeiros does not allege a pattern of similar violations by Middleborough police officers, he has sufficiently alleged that "'the need for more or different training is . . . obvious, and the inadequacy [is highly] likely to result in the violation of constitutional rights.'" *Bannon v. Godin*, 99 F.4th 63, 88 (1st Cir. 2024) (quoting *Canton*, 489 U.S. at 390); *see Gonsalves v. Clements*, No. 21-cv-021-WES, 2021 WL 3471335, at *3 (D.R.I. Aug. 6, 2021) (denying motion to dismiss a failure to train claim under Section 1983 against a municipality because of the "inherent dangerousness" of "[v]ehicular pursuits," which "involve split-second decisions, complicated tactical considerations, and a significant risk of injury or death to individuals being pursued, bystanders, and officers").

DENIED in part. Detective Sergeant Cramer's motion for joinder, ECF 84, is DENIED. Accordingly:

- Counts I and IV are DISMISSED against Officer Robbins but not Middleborough.
- Counts II and V are DISMISSED against Chief Perkins but not Lakeville.
- Counts III and VI are DISMISSED in their entirety without prejudice.
- Counts VII and VIII are DISMISSED as to all individual defendants other than Detective Sergeant Cramer.
- Count IX is DISMISSED against the Commonwealth but remains as to Lakeville and Middleborough.
- The Commonwealth, Sergeant McSweeney, Chief Perkins, Officer Robbins, and Troopers Reynolds, Trout, Bellao, and Micciche are DISMISSED as defendants.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 18, 2026